IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LARRY MCLEARN and DEANNA MCLEARN,

    Plaintiffs,

v.

WYNDHAM RESORT DEVELOPMENT CORP., WYNDHAM WORLDWIDE OPERATIONS, INC., WYNDHAM VACATION RESORTS, INC., WYNDHAM VACATION OWNERSHIP, INC., and JOHN DOES 1-100,

    Defendants.

NO. 3:19-cv-00004
JUDGE RICHARDSON

## **MEMORANDUM OPINION**

Pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim and for Attorneys' Fees (Doc. No. 8.) Plaintiffs have filed a Response in Opposition (Doc. No. 16), and Defendants have filed a Reply (Doc. No. 19).

### **BACKGROUND[1]**

This action arises from a complaint filed by Plaintiffs Larry and Deanna McLearn on October 1, 2018, in Tennessee state court[2] against Defendants Wyndham Resort Development Corp., Wyndham Worldwide Operations, Inc., Wyndham Vacation Resorts, Inc., Wyndham Vacation Ownership, Inc., and Wyndham Rewards, Inc. (collectively "Wyndham") and John Does 1-100, whom the Complaint identifies as individuals employed by or associated with Wyndham.

---

[1] Unless otherwise noted, the cited facts are alleged in the Complaint (Doc. No. 1-1) and accepted as true for the purposes of the instant Motion to Dismiss.

[2] Defendant removed the action to this Court based upon diversity jurisdiction. (Doc. No. 1).

Wyndham generally is alleged to market, sell and finance vacation interests, provide property management services to property owners' associations, and develop vacation ownership resorts.

In their Complaint, Plaintiffs allege: fraud (Count I), fraudulent misrepresentation (Count II), fraudulent inducement (Count III), misrepresentation by concealment (Count IV), negligent misrepresentation (Count V), violation of the Tennessee Timeshare Act ("TTA") (Count VI), violation of the Tennessee Consumer Protection Act ("TCPA") (Count VII), unjust enrichment (Count VIII), a claim for injunctive relief (Count IX), a claim for unconscionability (Count X), and a claim that the contract is one of "indefinite duration" (Count XI).[3] Plaintiffs seek compensatory, treble, and punitive damages, discretionary costs, attorney's fees, and injunctive relief.

Plaintiffs entered into a series of timeshare agreements (each a "Timeshare Agreement")[4] with Wyndham, beginning with one entered into on June 3, 2009. (Doc. No. 9 at Ex. A.)[5] Plaintiffs

---

[3] Tennessee courts consider fraud, intentional misrepresentation, and fraudulent misrepresentation to be different names for the same cause of action. *Odigie v. Nationstar Mortgage, LLC,* No. 3:18-cv-00675, 2020 WL 819517, at * 4 (M.D. Tenn. Feb. 19, 2020); *City of Morristown v. AT&T Corp.,* 206 F. Supp. 3d 1321, 1331 (E.D. Tenn. 2016) (Tennessee Supreme Court suggests that the term intentional misrepresentation should be used exclusively for fraud and intentional misrepresentation, which are "different names for the same cause of action.").

[4] To provide a general sense for what is meant (broadly speaking) by "timeshare agreement," the Court notes that Black's Law Dictionary defines a "timeshare contract" as "a legal transaction whereby one party grants to another party the right, over a substantial period, to use property (such as a holiday home) on a regularly recurring basis." *Timeshare Contract,* Black's Law Dictionary (11th ed. 2019).

[5] Plaintiffs did not attach copies of the five Timeshare Agreements to their Complaint, but Defendants have attached copies to their Motion to Dismiss. Generally, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). In considering a Rule 12(b)(6) motion, however, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss, provided they are referred to in the complaint and are central to the claims. *Asurion, LLC v. SquareTrade, Inc.,* 407 F. Supp. 3d 744, 748 (M.D. Tenn.

entered into additional Timeshare Agreements with Wyndham on September 26, 2011 and April 22, 2013. (*Id.* at Exs. B and C.) Plaintiffs entered into their most recent Timeshare Agreements with Wyndham on September 29, 2013. (*Id.* at Exs. D and E.) Plaintiffs' claims arise from these five separate Timeshare Agreements. (*Id.* at Exs. A-E). As Wyndham notes, Plaintiffs are not inexperienced timeshare consumers.

Plaintiffs allege that Wyndham's policies and procedures lead its salespeople "to intentionally, negligently, or fraudulently mislead, misrepresent or omit facts to its potential and current customers." (Doc. No. 1-1 at ¶ 41.) Plaintiffs claim that they were pressured into upgrading their timeshare properties and/or timeshare points when they attended events held by Defendants that were supposed to be owner-education meetings, but which were actually "high-pressure" sales presentations. (*Id.* at ¶¶ 44, 50). Plaintiffs allege that these high-pressure meetings confused them, "causing them to misunderstand what they were purchasing and the actual terms and conditions of the purchase." (*Id.* at ¶ 53.)

Specifically, Plaintiffs allege that Defendants misrepresented: (1) that each timeshare being purchased was more valuable than the previous timeshare purchased; (2) that the timeshare would increase in value and could be sold at a profit; (3) that the maintenance fee would be lowered if Plaintiffs upgraded or traded; (4) that Plaintiffs could refinance with their own bank to get a lower interest rate; (5) that Plaintiffs could vacation anywhere at any time; (6) that the timeshare could be rented to pay for maintenance fees or cover the mortgage; (7) that Plaintiffs had to purchase additional properties to make their existing membership current and able to be used; (8) certain information about the points program offered by Defendants' credit card; (9) the amount of credit

---

2019). The Timeshare Agreements are clearly referred to in the Complaint and central to Plaintiff's claims.

Plaintiffs were being given in "equity" under their existing timeshare; (10) that Defendants would buy the timeshare back if Plaintiffs were not happy with the purchase; and (11) that the salesperson would be their personal representative to help rent out their timeshare and make them reservations. (Doc. No. 1-1).

Plaintiffs also allege that Defendants failed to tell Plaintiffs: (1) that they would be competing against the non-owner public at large to reserve timeshare units; (2) that timeshare points[6] are an illiquid asset with no aftermarket, making it nearly impossible for Plaintiffs to resell their timeshare; (3) that the properties were either rarely available to use or in poor condition; and (4) all the terms and conditions of the so-called "Pathways" program. (Doc. No. 1-1). Finally, Plaintiffs allege that Defendants "systematically eliminated benefits that directly impact Plaintiffs' use of the timeshare" and sold the timeshare to Plaintiffs at a "hugely inflated cost." (*Id.*)

After removing the case to this Court, Defendants filed the instant Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 8.) Defendants ask this Court to dismiss Plaintiffs' Complaint and award Defendants their attorneys' fees. (*Id.*)

---

[6] For context, the Court notes that another district court has characterized an earlier district court opinion as describing timeshare points as "a vacation license, constituting a right to use and occupy a unit during the member's timeshare use, and a nonexclusive license to use, enjoy, and occupy the property." *Kissling v. Wyndham Vacation Resorts, Inc.*, Case No. 15-cv-04004, 2015 WL 7283038, at * 3 (N.D. Cal. Nov. 18, 2015) (citing *Wixon v. Wyndham Resort Dev. Corp.*, No. C07-02361 JSW, 2008 WL 1777590, at *4 (N.D. Cal. Apr. 18, 2008)). *Kissling* opined that for the most part, "timeshare interests," "vacation credits," and "timeshare points" are interchangeable terms. *Id.* at *3 n.2 The Court understands from experience that the terms are not always used interchangeably, however, and the Complaint does not indicate what it means when it refers to "timeshare points."

# LEGAL STANDARD[7]

For the purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true, as the Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing

---

[7] Plaintiffs cite to only the Tennessee Rules of Civil Procedure and Tennessee state cases concerning the applicable legal standard (Doc. No. 16 at 1-2), but since this is federal court, this Motion is brought pursuant to Fed. R. Civ. P. 12, not a Tennessee state rule.

plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

Unlike when considering a motion for summary judgment, the Court cannot resolve any disputed issues of fact or weigh the evidence. It must merely determine whether Plaintiff's Complaint sufficiently states the claims asserted, pursuant to the standard set forth above.

## DISCUSSION

<u>Fraud-Based Claims – Failure to Plead with Particularity</u>

Defendants argue that Plaintiffs did not allege their fraud-based claims (fraud, fraudulent misrepresentation, fraudulent inducement, misrepresentation by concealment, violation of the Tennessee Timeshare Act,[8] and violation of the Tennessee Consumer Protection Act[9]) with sufficient particularity. (Doc. No. 9 at 13-14.) As Defendants note, all allegations of fraud must meet the pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure.

---

[8] As in *Hamm*, Plaintiffs' TTA claim is premised upon the same allegedly fraudulent misrepresentations that support their fraud claims. Therefore, the TTA claim is subject to Rule 9 and dismissal for failure to comply with Rule 9(b)'s particularity requirements. *See Hamm*, 2019 WL 6273247, at * 5.

[9] Complaints alleging unfair or deceptive acts or practices under the Tennessee Consumer Protection Act are subject to Rule 9(b)'s heightened pleading standard. *Davin v. Resolution Mgmt. Consultants, Inc.,* No. 3:18-cv-346, 2019 WL 2476738, at * 3 (E.D. Tenn. June 13, 2019); *LeBlanc v. Bank of America*, No. 2:13-cv-02001, 2013 WL 46829, at * 6 (W.D. Tenn. June 18, 2013). Therefore, if a TCPA claim fails to provide the particularity required, it will be dismissed. *See Sony/ATV Music Publishing LLC v. D.J. Miller Music Distribs., Inc*., No. 3:09-cv-01098, 2011 WL 4729811, at * 9 (M.D. Tenn. Oct. 7, 2011).

The Court finds that the case of *Hamm v. Wyndham Resort Dev. Corp.*, Case No. 3:19-cv-00426, pending before Judge Trauger in this Court, is remarkably similar to this case. The *Hamm* case was filed by the lawyer for Plaintiffs in this case against the same Wyndham entities that are Defendants in this case, plus John Does 1-100. The *Hamm* complaint alleged fraud, fraudulent misrepresentation, fraudulent inducement, misrepresentation by concealment, negligent misrepresentation, violation of the Tennessee Timeshare Act, breach of contract, and unjust enrichment.[10]

The factual allegations in *Hamm* are substantially the same as those in this case. For example, in *Hamm,* the plaintiffs' claims "are premised upon their purchase of timeshare properties and points for resort properties." *Hamm v. Wyndham Resort Dev. Corp.*, Case No. 3:19-cv-00426, 2019 WL 6273247, at * 1 (M.D. Tenn. Nov. 25, 2019). The plaintiffs in *Hamm* claim that they own Wyndham-related timeshare or vacation club membership points and/or properties; that they have been continuously pressured into the purchase of additional Wyndham points and/or properties; that Wyndham employees are trained to "intentionally, negligently or fraudulently mislead, misrepresent or omit facts" to Wyndham's customers; that Wyndham has "systematically eliminated benefits that directly impact the plaintiffs' use of their Wyndham points and properties; and that Wyndham employs "bait and switch" tactics to induce and pressure customers to buy additional points and properties. *Id.* All these factual allegations are also asserted in this case.

The plaintiffs in *Hamm* and Plaintiffs here also allege the same misrepresentations made by Wyndham employees to them. *Compare Hamm,* 2019 WL 6273247, at * 2 *with* Doc. No. 1 herein at 7-10. Moreover, the *Hamm* plaintiffs allege generally the same facts that Wyndham

---

[10] Thus, all the causes of action asserted in the *Hamm* case, except breach of contract, are asserted in this case as well. In this case, there are additional alleged "causes of action" for violation of the Tennessee Consumer Protection Act, unconscionability, and contracts of indefinite duration.

7

employees failed to disclose as do the Plaintiffs herein. *Id.* The Court in *Hamm* found that the plaintiffs had failed to state their fraud-based claims with sufficient particularity. *Hamm*, 2019 WL 6273247, at ** 3-4.

Rule 9(b) of the Federal Rules of Civil Procedure provides that in alleging fraud, a party must state with particularity the circumstances constituting the fraud. This standard applies to all of Plaintiffs' fraud-based claims. The Sixth Circuit has explained that Rule 9(b) requires a plaintiff to: (1) specify the allegedly fraudulent statements; (2) identify the speaker; (3) plead when and where the statements were made; and (4) explain what made the statements fraudulent. *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012), cited in *Hamm*, 2019 6273247, at * 4. Moreover, when a plaintiff asserts fraud claims against multiple defendants, it typically must make specific allegations as to each defendant's alleged involvement. *Id.*[11]

Although the Timeshare Agreements provided by Defendants identify dates on which they were signed, Plaintiffs' Complaint does not allege when the allegedly fraudulent statements were made. That information, of course, is not solely within Defendants' knowledge. The Complaint also fails to assert *where* the alleged fraud took place. Plaintiffs allegedly signed five different Timeshare Agreements. Although Plaintiffs allege that they purchased timeshare properties/points in Tennessee, they fail to identify where in Tennessee and where in other states they were fraudulently misled. Again, where their claims arose is not a matter solely within Defendants' knowledge. In addition, Plaintiffs have failed to identify the speaker(s) who allegedly made fraudulent statements, although many of the Timeshare Agreements and supporting documents are signed by specific Wyndham employees.

---

[11] Courts may relax Rule 9(b)'s particularity requirement when certain information is solely within the defendants' knowledge. *Hamm*, 2019 WL 6273247, at * 4.

8

Here, as in *Hamm*, Plaintiffs also fail to distinguish among the six Wyndham Defendants to identify which Defendant(s) made the allegedly fraudulent statements, even though each Timeshare Agreement identifies the entity with which Plaintiffs contracted. Plaintiffs' repeated reference simply to "Defendants" or "Wyndham" is not sufficient. *See Hamm*, 2019 WL 6273247, at * 5. Claims for intentional misrepresentation require specific allegations as to each defendant's alleged involvement. *Construction Mgmt., Inc. v. Expo Hospitality, LLC,* Case No. 3:19-cv-00298, 2020 WL 489461, at * 4 (M.D. Tenn. Jan. 30, 2020); *Triumph Hospitality, LLC v. Construction Mgmt., Inc.,* Case No. 3:19-cv-00353, 2019 WL 3841942, at * 6 (M.D. Tenn. Aug. 15, 2019) (when a plaintiff pursues fraud claims against multiple defendants, it must make "specific allegations as to each defendant's alleged involvement.").

For these reasons, Plaintiffs' fraud-based claims—fraud, fraudulent misrepresentation, fraudulent inducement, misrepresentation by concealment, violation of the TTA, and violation of the TCPA—are dismissed for failure to plead fraud with particularity. The Court will follow the decision of Judge Trauger in *Hamm,* however, and dismiss these claims without prejudice to Plaintiffs' right to seek leave to amend their Complaint. [12] *See Hamm,* 2019 WL 6273247, at * 5. ("because it is not clear that the claims could not be saved by amendment, the fraud-based claims will be dismissed without prejudice to the plaintiffs' right to seek leave to amend.")

Having dismissed Plaintiffs' fraud-based claims for this reason, the Court does not reach Defendants' other arguments concerning those claims.

---

[12] By dismissing these claims without prejudice, the Court is not saying that any such motion to amend would be granted. The Court is aware that Defendants' other arguments could prove persuasive and thus indicate that any such amendment would be futile.

Negligent Misrepresentation

Defendants argue that Plaintiffs' claim for negligent misrepresentation (Count V), among other claims, is barred by the applicable statute of limitations. Actions for injury to personal property have a three-year statute of limitations. *See* Tenn. Code Ann. § 28-3-105. Plaintiffs' claim for negligent misrepresentation is subject to this statute of limitations. *Greene v. Mercedes-Benz, USA,* No. 2:18-cv-139, 2020 WL 523996, at * 3 (E.D. Tenn. Jan. 31, 2020). In other words, the limitations period for negligent misrepresentation expires three years from the accrual of the cause of action. *Daelim USA, Inc. v. FabArc Steel Supply, Inc.,* Case No. 3:19-cv-00247, 2019 WL 7765933, at * 3 (M.D. Tenn. June 10, 2019). Plaintiffs signed Timeshare Agreements on June 3, 2009, September 26, 2011, and April 22, 2013. Plaintiffs' most recent Timeshare Agreements were executed on September 29, 2013, and Plaintiffs filed this action on October 1, 2018, five years later. (Doc. No. 9 at 14; Doc. No. 1-1 at 4.) This filing was clearly outside of the applicable statute of limitations for this claim, unless Plaintiffs' negligent misrepresentation claim is somehow appropriately deemed to have accrued at least two years after Plaintiffs signed the most recent Timeshare Agreements on September 29, 2013.

Plaintiffs argue that their claims did not accrue on that date, because they did not have actual or constructive knowledge of these claims on that date. (Doc. No. 16 at 3.) The Complaint alleges that Plaintiffs "just recently discovered" that these material facts were fraudulently suppressed and concealed by Defendants; "just recently discovered" the full extent of the falsity of these representations; and could not have discovered this fraud despite exercising reasonable care and diligence. (Doc. No. 1 at ¶¶ 115, 131, 142, and 149). Plaintiffs do not specify what "just recently discovered" means.

10

A cause of action for negligent misrepresentation accrues when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered his injury and the cause thereof. *Harris v. Nationwide Mut. Fire Ins. Co.,* Case No. 3:11-cv-00412, 2019 WL 2008542, at * 8 (M.D. Tenn. May 7, 2019). The statute of limitations begins to run when the plaintiff knew or reasonably should have known of the injury which forms the basis of his claim. *Cockrill v. Metro. Gov't of Nashville and Davidson Cty.,* No. 3-13-0587, 2015 WL 136271, at * 3 (M.D. Tenn. Jan. 9, 2015) (citing *Ruff v. Runyon,* 258 F.3d 498, 500 (6th Cir. 2001)).

This "discovery rule" charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed, and the limitations period begins to run when a plaintiff gains information sufficient to alert a reasonable person of the need to investigate the injury. *Chunn v. Southeast Logistics, Inc.,* No. 2:17-cv-02848, 2018 WL 6834715, at * 2 (W.D. Tenn. Dec. 28, 2018). However, the discovery rule does not delay the accrual of the cause of action all the way until the plaintiff determines the full extent of her injury nor is it intended to permit a plaintiff to delay filing suit until the discovery of all the facts that affect her claim. *Id.* The statute of limitations is tolled[13] only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry. *Id.*

---

[13] The term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1039–40 (1997). The case cited here, *Chunn,* appears to use "tolled" in the former sense; *i.e.*, to mean a postponement of the accrual date. The Court notes that the Complaint does not suggest any

The question, then, is when Plaintiffs knew or should have known that they had been injured by Defendants' alleged negligent misrepresentation. If it was more than three years prior to October 1, 2018, the limitations period presumptively has run. Whether a plaintiff exercised reasonable care and diligence in discovering his injury or wrong is usually a fact question for the jury to determine. *Chunn,* 2018 WL 6834715, at * 3. However, dismissal of a complaint is proper in situations where the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he was injured as a result of the defendant's wrongful conduct. "Claims that are barred by the applicable statute of limitations are subject to dismissal." *Syzak v. Dammon*, No. 15-2468, 2017 WL 5712670, at * 2 (6th Cir. Feb. 17, 2017) *(citing Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519–20 (6th Cir. 2008) (holding that a statute-of-limitations issue may be reached on a motion to dismiss under Rule 12(b)(6))).[14] But, the complaint must be liberally construed in determining whether the action is time-barred. *Ott v. Midland–Ross Corp.,* 523 F.2d 1367, 1369 (6th Cir.1975)); *Gibson v. Am. Bankers Ins. Co.*, 91 F. Supp. 2d 1037, 1041 (E.D. Ky. 2000).

---

"tolling" in the latter sense, *i.e.*, does not suggest (at least, not with any clarity or true factual material) any basis for stopping the running of the limitations period once the claims accrued.

[14] Generally, a Rule 12(b)(6) motion is not an appropriate vehicle for dismissing a claim based upon the statute of limitations because the statute of limitations is an affirmative defense, and "a plaintiff generally need not plead the lack of an affirmative defense to state a valid claim." *Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 547 (6th Cir.2012). But, when the allegations in the complaint affirmatively show that the claim is time-barred, dismissing the claim under Rule 12(b)(6) is appropriate. *Id.* (citing *Jones v. Bock,* 549 U.S. 199, 215 (2007)). *Richardson v. Tennessee*, No. 13-2482, 2014 WL 794365, at *8 (W.D. Tenn. Feb. 27, 2014). An exception to the general rule applies—and dismissal may be warranted—if the allegations in the complaint affirmatively show that the claim is time-barred. *Hamm*, 2019 WL 6273247, at * 6 (citing *Cataldo*).

12

A district court in this circuit has laid out the standard for granting a 12(b)(6) motion based on the statute of limitations:

> A statute of limitations defense may form the basis of a Rule 12(b)(6) "when it is apparent from the face of the complaint that the time limit for bringing the claim has passed." *Hoover v. Langston Equip. Assoc., Inc.,* 958 F.2d 742, 744 (6th Cir.1992). Accordingly, under Rule 12(b)(6), a motion to dismiss based on a violation of statute of limitations laws should be granted "when the statement of the claim affirmatively shows that the plaintiff can prove no set of facts that would entitle him to relief." *Ott,* 523 F.2d at 1369.

*Stewart v. Columbus S. Power*, No. 2:10-CV-00232, 2010 WL 2667375, at * 2 (S.D. Ohio June 30, 2010). As explained below, the standard is met here.

Here, although Plaintiffs contend that their negligent misrepresentation claim did not accrue before, or at the time, they signed the September 2013 Timeshare Agreements, they do not identify when or under what circumstances they believe their claims *did* accrue.[15] Notably, they do not indicate whether they believe their claims accrued *after* October 1, 2015, the date on or after which their claims must have accrued lest they be time-barred. Other than saying that they "recently discovered" the full extent of Defendant's misconduct, Plaintiffs do not state when that discovery was or what made them aware of the alleged wrongs. Moreover, Plaintiffs' Complaint does not allege any disability that would have prevented Plaintiffs from reading and understanding the Timeshare Agreements and/or from reasonably investigating the truth of the alleged misstatements by Defendants. Neither do Plaintiffs allege that they objected to the terms of the Agreements at the times they signed them.

---

[15] Plaintiffs' brief actually states that "Plaintiffs *remain unaware* of the illegal conduct because they are fraudulently led to believe that one more upgrade is all that is needed to secure the product they were promised." (Doc. No. 16 at 5) (emphasis added).

13

Defendants argue that Plaintiffs had notice of the alleged misrepresentations each time they signed a Timeshare Agreement because the Agreements themselves expressly contradict the alleged misrepresentations.[16] For example, Plaintiffs claim that they were not given the opportunity to discuss the deal "amongst themselves" or to consult outside legal or financial counsel, that they were not given an opportunity to discuss their finances and decisions with each other, and that they were forced to make pressurized and hurried decisions by Defendants. (Doc. No. 1 at ¶¶ 73, 75 and 77). Yet, every Timeshare Agreement provided Plaintiffs a right to cancel the Agreement within a certain number of days—ranging from five to fifteen—as evidenced by Exhibits A – E attached to Doc. No. 9. (Doc. Nos. 9-1 at 7; 9-2 at 2; 9-3 at 7; 9-4 at 7, and 9-5 at 7). Another example is reflected in Plaintiffs' contention that Defendants falsely represented that the timeshares would increase in value, could be sold at a profit, and were sound financial investments. (Doc. No. 1 at ¶¶ 55 and 57). But in the Timeshare Agreements, Plaintiffs agreed that they were purchasing the timeshares for the purpose of recreational and social use, and *not for financial profit*. (*See, e.g.,* Doc. No. 9-4 at 2; Doc. No. 9-5 at 2).

Inquiry notice charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed. *Hamm,* 2019 WL 6273247, at * 6. A party is presumed to know the contents of a contract he signs. *Patton v. Volkswagen Group of Am. Chattanooga Operations, LLC,* No. 1:16-cv-327, 2017 WL 1288677, at * 9 (E.D. Tenn. Apr. 6, 2017). One is under a duty to learn the contents of a written contract before he signs it and if, without being the

---

[16] In *Eldridge v. Savage*, No. M2012-0093, 2012 WL 6757941 (Tenn. Ct. App. Dec. 28, 2012), cited by Plaintiffs, there was no contract—specifically, there was no contract that included allegedly contradictory terms—and the dispute centered around alleged oral misrepresentations by a selling homeowner as to the state of his home.

14

victim of fraud,[17] he fails to read the contract or otherwise to learn its contents, he signs the same at his peril. *Id*. To allow a party to admit he signed a contract, but deny it expresses the agreement he made, or to allow him to admit he signed it but did not read it or know its stipulations "would absolutely destroy the value of all contracts." *Pyburn v. Bill Heard Chevrolet,* 63 S. W. 3d 351, 359 (Tenn. Ct. App. 2001).

Defendants contend that, as a matter of law, Plaintiffs were on notice of terms which directly refuted the alleged misrepresentations upon which they premise their claims. To the extent that the terms of the Timeshare Agreements contradict Defendants' alleged negligent misrepresentations, the Court believes they would have put a reasonable person on inquiry notice of those misrepresentation claims. Even if Plaintiffs did not read the Timeshare Agreements sufficiently for such notice, the falseness of many of the allegedly negligent misrepresentations should have become apparent to Plaintiffs shortly after they were made, before the limitations period had run, or even within the shorter time periods when Plaintiffs could cancel the contracts.

For example, Plaintiffs certainly would have had notice the next time yearly fees were due that the maintenance fees were not lowered after they upgraded or traded. Plaintiffs should have realized, within the three-year limitations period (that is, by September 2016, three years after they signed the last Timeshare Agreements), that the information about the points program offered by Defendants' credit card was incorrect or that they could not "vacation anywhere at any time." Also, if (as alleged) Plaintiffs truly did attempt to use their timeshare points but encountered unexpected problems with reserving timeshare units, that would have put them on notice of any previously unexpected competition—including from "the non-owner public at large"—in reserving timeshare

---

[17] The Court assumes that the "fraud" referred to here is fraud regarding either the contents of the written contract or the need to read the written contract.

15

units. Moreover, if Plaintiffs were not happy with their purchases, they certainly would have learned, within the three-year limitations period, that Defendants' representation that it would buy back the timeshare was false.

Plaintiffs argue that their causes of action were fraudulently concealed by Defendants. The Court has already found that Plaintiffs failed to state a claim for fraudulent concealment with sufficient particularity. Plaintiffs do not allege with any particularity facts showing that they could not have discovered their injury sooner or that Defendants prevented them from investigation or notice within the relevant time period. Accordingly, Plaintiffs' claim for negligent misrepresentation will be dismissed. For the reasons stated above and in *Hamm*, 2019 WL 6273247, at * 5, and because Plaintiffs rely upon fraud-based claims (which have been dismissed without prejudice) to avoid the statute of limitations, dismissal of this claim likewise will be without prejudice.

Unjust Enrichment

Plaintiffs allege in Count VII that "Defendants received monetary benefit from Plaintiffs without consideration," so Defendants were unjustly enriched.[18] (Doc. No. 1-1 at 26.) "Unjust enrichment is generally not available if a valid and enforceable written contract governs the subject matter at issue between the parties." *See Maverick Grp. Mktg. v. Worx Envtl. Prods.*, 99 F. Supp. 3d 822, 838 (W.D. Tenn. 2015) (internal quotation marks omitted). Plaintiffs entered into multiple Timeshare Agreements with Defendants. (Doc. No. 9, Exs. A-E). Because there are written

---

[18] The elements of an unjust enrichment claim are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for defendant to retain the benefit without payment of the value thereof. *Hamm,* 2019 WL 6273247, at * 8 (citing *Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512, 525 (Tenn. 2005)).

16

contracts involved here, Plaintiffs' unjust enrichment claims are not available. Plaintiffs identify the Timeshare Agreements and the circumstances surrounding their execution as the bases for their claims in this case. Whether those contracts are valid and/or enforceable is not before the Court at this time, given how Plaintiffs' claims are pled.[19] Therefore, the Court will dismiss Count VII.

There is an alternative basis for dismissal of the unjust enrichment claim. The only allegations in Count VII of the Complaint (for unjust enrichment) are that: (1) Defendants received monetary benefit from Plaintiffs without consideration; (2) Defendants have failed or refused to return the monies paid to Defendants; and (3) Defendants will be unjustly enriched by keeping the monies received from Plaintiffs and Defendant has failed to provide Plaintiff with any consideration or value for same. (Doc. No. 1 at 23). Contrary to these allegations, other allegations in the Complaint assert that Defendants *have* provided Plaintiffs consideration—albeit consideration with which Plaintiffs are dissatisfied—for their payments, as outlined in the Timeshare Agreements, by providing Plaintiffs with "ownership interests" in Defendants' residential properties and points. (Doc. No. 9, Ex. B at 1.) Where, as here, the "pleadings internally contradict verifiable facts central to [a plaintiff's] claims, that makes [the plaintiff's] allegations implausible." *Bailey v. City of Ann Arbor*, 860 F. 3d 382, 387 (6th Cir. 2017).

Injunctive Relief

Count IX alleges that Plaintiffs are entitled to injunctive relief because Plaintiffs will be irreparably harmed if they are required to pay additional funds to Defendants. (Doc. No. 1-1 at 27). Plaintiffs seek an injunction to bar Defendants from collecting further fees, costs, or expenses from Plaintiffs and to enjoin Defendants from making disparaging remarks about Plaintiffs' credit. Count IX does not ask the Court to rescind or void the Timeshare Agreements.

---

[19] Count VII seeks damages, not rescission of the contracts.

In determining whether to issue injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court is to consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006). When determining whether to issue injunctive relief, a threat of an immediate, irreparable harm must be present. Fed. R. Civ. P. 65(b)(1)(A) (requiring a court to examine whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant"). *Cunningham v. First Class Vacations, Inc.,* No. 3:16-cv-2285, 2019 WL 1306214, at *1 (M.D. Tenn. Jan. 11, 2019).[20]

A plaintiff's harm is not irreparable if it is fully compensable by money damages. *Burkesville Hardwoods, LLC v. Coomer,* Civil Action No. 1:18-cv-00018, 2020 WL 353232, at * 3 (W.D. Ky. Jan. 17, 2020); *Langley v. Prudential Mortg. Capital Co., LLC*, 554 F.3d 647, 649 (6th Cir. 2009). Defendants assert that Plaintiffs' alleged harms *are* compensable by monetary

---

[20] The Court is aware that confusion was created when language in some cases appeared to state that a "balance of hardships" test was an alternative to the traditional irreparable harm test for injunctive relief. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). The balance of hardships test, however, does not eliminate the irreparable harm requirement. *Id*. As the Sixth Circuit recently noted:

> Even the strongest showing on the other three factors cannot "eliminate the irreparable harm requirement." That factor is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit. That's why this circuit has held that a district court abuses its discretion "when it grants a preliminary injunction without making specific findings of irreparable injury[.]" Thus, although the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory.

*D.T. v. Sumner Cty. Schools,* 942 F.3d 324, 326-27 (6th Cir. 2019) (citations omitted).

18

damages, and Plaintiffs have not alleged otherwise. And it appears to the Court that they indeed would be fully compensable by money damages.

Plaintiffs have failed sufficiently to allege a claim for injunctive relief by failing to allege irreparable harm. Therefore, this Court will dismiss Count IX, Plaintiffs' claim for injunctive relief with prejudice.

Unconscionability

In Count X, Plaintiffs allege that the Timeshare Agreements are procedurally and substantively unconscionable. (Doc. No. 1-1 at 28.) "Unconscionability" is not a cause of action. The doctrine of unconscionability is not available to obtain affirmative relief, but rather it is available only as a defense. *Mullin v. Southeast Bank,* No. 2:18-cv-00046, 2019 WL 2482162, at * 11 (M.D. Tenn. Feb. 4, 2019.[21] Tennessee law does not recognize unconscionability as an actionable claim. *Id.*; *Greer v. Home Realty Co. of Memphis, Inc.,* No. 07-2639, 2010 WL 11493119, at * 5 (W.D. Tenn. May 18, 2010).

There being no cognizable cause of action asserted in Count X of Plaintiffs' Complaint, Count X will be dismissed with prejudice. Nothing herein bars Plaintiffs from arguing, *in relation to other claims*, that these Timeshare Agreements were unconscionable.

Contracts of Indefinite Duration

Plaintiffs allege in Count XI that the Timeshare Agreements are "contracts of indefinite duration." (Doc. No. 1-1 at 30.) Once again, this claim is not a cognizable cause of action.

---

[21] This opinion, a Report and Recommendation from a magistrate judge, was later rejected in part on other grounds by the district judge in *Mullin v. Southeast Bank,* 2019 WL 1055762 (M.D. Tenn. Mar. 6, 2019).

Moreover, Plaintiffs did not respond to Defendants' arguments concerning this claim. Count XI as a separate cause of action will be dismissed with prejudice.

Attorneys' Fees

Defendants seek indemnification from Plaintiffs for attorneys' fees, pursuant to Tenn. Code Ann. § 47-18-109(c)(2), because (according to them) Plaintiffs' TCPA claim (Count VII) is frivolous. (Doc. No. 9 at 26.) Because Plaintiff's TCPA claim will be dismissed without prejudice, Defendants' Motion for Attorneys' Fees will be denied.

## CONCLUSION

For all the reasons stated herein, Defendants' Motion to Dismiss (Doc. No. 8) will be granted. Plaintiff's fraud-based claims (fraud, fraudulent inducement, fraudulent misrepresentation, misrepresentation by concealment, violation of the Tennessee Timeshare Act, and violation of the Tennessee Consumer Protection Act), for negligent misrepresentation, and for unjust enrichment will be dismissed without prejudice to Plaintiffs' ability to seek leave to file an amended Complaint that cures the deficiencies identified herein. Plaintiffs' claims for injunctive relief, unconscionability, and "contract of indefinite duration" will be dismissed with prejudice.

Defendants' Motion for Attorneys' Fees (Doc. No. 8) will be denied.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE